UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No.: |
| vs. | 1:17-CR-00234-AT-CMS |
| **JOHN HOLLAND,** | |
| **Defendant.** | |
| _____ / | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

The United States, by and through the undersigned, hereby responds to Defendant's Motion for Reconsideration of Order Concerning the Government's Obligation to Produce *Brady* Materials in Useful Form ("Motion for Reconsideration"). (D.E. 118). For the following reasons, the Defendant's motion should be denied.

### BACKGROUND

On August 10, 2017, the parties participated in a teleconference with the Court to discuss, among other things, defense counsel's issues with the Government's electronic production of certain patient files. Specifically, defense counsel argued that the Government, by scanning the documents in a certain way and removing the individual patient file folder breaks, had committed a deliberate *Brady* violation.

1

Defense counsel asserted that because it is impossible for them to identify discrete patient files within the electronic documents, the documents are not useable, and that the boxes containing the patient files need to be rescanned.  Defense counsel asked the Court for an order requiring the Government to pay for half the costs of rescanning these documents.

Also during this teleconference, the Government provided the Court with an overview of the context and background surrounding the scanning of these patient files and explained to the Court that the Government had acted in good faith.  The Government argued that it had met its discovery obligations with respect to these patient files, and respectfully declined to re-scan or share in the costs of re-scanning the files.  At the conclusion of the call, the Court asked the parties to submit simultaneous briefs outlining the law with respect to the Government's discovery obligations concerning the boxes of patient files at issue.

On August 17, 2017, the parties submitted simultaneous papers setting forth the law and their respective positions.  (*See* D.E. 109, D.E. 110[1]).

On August 27, 2017, the Court issued an order ("the Order") denying the Defendant's request that the Government be required to share in the cost of re-

---

[1]     The United States' Memorandum Concerning the Government's Disclosure of Patient Files (D.E. 110) is fully incorporated herein.

scanning the documents. (D.E. 111). The Court found that "[c]ontrary to the Defendant's argument, there is no indication that the Government padded the discovery with irrelevant documents, made access to the discovery documents unduly onerous, or deliberately concealed exculpatory evidence." (D.E. 111 at 3). The Court also found that "it appears that the Government acted reasonably when it decided to scan the documents, and Defendant wants the documents scanned in a different format – that they be 'unitized.'" (*Id.*).

The Defendant, unsatisfied with the Court's ruling, has filed the instant motion for reconsideration.

## ARGUMENT

### A. Legal Standard

"[T]he Supreme Court and [the Eleventh Circuit] have permitted motions for reconsideration in criminal cases notwithstanding the fact that the Federal Rules of Criminal Procedure do not expressly provide for them." *United States v. Phillips*, 597 F.3d 1190, 1199 (11th Cir. 2010). Motions for reconsideration are not to be filed as a matter of course, but only when "absolutely necessary." N.D. Ga. Local R. 7.2(E) (2017). It is well-established in this district that "[r]econsideration is only 'absolutely necessary' where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a

clear error of law or fact." *Bryan v. Murphy,* 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003).

Given the narrow scope of motions for reconsideration, there are a variety of circumstances under which a motion for reconsideration is inappropriate. Specifically, motions for reconsideration may not be used to present the court with arguments already heard and dismissed, to repackage familiar arguments to test whether the court will change its mind, or offer new legal theories or evidence that could have been presented in the original briefs. *Id.* at 1259; *see also Willis v. Arp,* No. 1:15-CV-0791-AT, 2016 WL 9046674, at *1 (N.D. Ga. May 11, 2016) (Totenberg, J.). "Nor should a motion for reconsideration be used to rehash arguments already made or to refute the court's ruling." *Perez v. Sprint/United Mgmt. Co.*, No. 1:12-CV-3161-MHS, 2014 WL 11862794, at *1 (N.D. Ga. Feb. 25, 2014). Simply put, "parties may not use a motion for reconsideration as an opportunity to show the court how it 'could have done it better.'" *Bryan,* 246 F. Supp. 2d at 1258 (internal quotations and citation omitted). "If a party presents a motion for reconsideration under any of these circumstances, the motion must be denied." *Id*. at 1259.

"In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly."

*Dotson v. Waldo*, No. 4:14-CV-0322-HLM, 2016 WL 7888023, at *1 (N.D. Ga. Mar. 31, 2016) (citation omitted). As such, "[a] motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *McKee v. United States*, No. 1:11-CV-2526-RGV, 2014 WL 11517832, at *1 (N.D. Ga. May 21, 2014 (quoting *Kenner v. Deloatch*, Civil Action No. 1:08-CV-446-WSD, 2009 WL 5173499, at *3 (N.D. Ga. Dec. 30, 2009)). Court opinions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *O'Malley v. Avalon Mortg., Inc.,* No. CIV.A 209CV0119RWS, 2010 WL 1418357, at *1 (N.D. Ga. Apr. 7, 2010) (citation omitted).

### B.     There is No Basis for the Court to Reconsider its Prior Order

The Court should deny the Defendant's motion for reconsideration as a matter of law because the Defendant has not identified any newly discovered evidence, intervening development or change in controlling law, or need to correct a clear error of law. Here, the Defendant asks the Court to take the extraordinary step of reconsidering its prior Order because he asserts that the Court "misapprehended" certain facts which he contends were key to the Court's

decision.² Specifically, the Defendant contends that the Court misapprehended the following facts related to the Government's production of the patient files: (1) "these scans reflect document-level organization that accurately reflects how the records are maintained in the hard-copy files"; (2) "the documents were electronically searchable"; and (3) "that they were accompanied by a useful index detailing the organization of the files." (D.E. 118 at 7). The Defendant's argument fails because the Court did not misapprehend or misunderstand the relevant facts relating to the patient files in its Order.

**First**, the Defendant argues that the Court should reconsider its prior Order because the Government's electronic production of patient files, which was provided as a courtesy copy to the Defendant, contains certain files that were not scanned at the "document level" or were scanned without consistent organization, and are therefore not useable. (D.E. 118.) These are the same arguments that defense counsel made on the August 10th conference call and in the August 17th position paper. (D.E. 109). Fully understanding the issue, the Court squarely framed the Defendant's position in its Order. The Court stated, "Defense

---

² The Defendant cites *Leone v. United States,* 233 F.Supp.3d 1366 (M.D. Fla. 2017), for the proposition that an error in a court's apprehension can serve a basis for reconsideration. Notably, the court in *Leone* also stated that "[s]uch problems rarely arise and the motion to reconsider should be equally rare." The *Leone* court denied the movant's motion for reconsideration. *Id.* at 1371.

counsel asserts that it is impossible to identify discrete patient files within the electronic documents, and that in order for the information to be useful, the boxes containing patient files (approximately 200 boxes) need to be rescanned." (D.E. 111 at 2.). Thus, the Court fully understood, addressed and ultimately rejected the Defendant's position that the Government be required to pay for the cost of re-scanning the documents to address the patient file issue.

The Defendant seeks to rehash this argument by providing certain examples of documents that he contends are not correctly unitized, but these examples do nothing to aid or correct the Court's understanding of the core issue. They merely serve to illustrate the unitization issue that the Defendant previously raised and that the Court articulated, analyzed, and addressed. Thus, the Defendant's repeated contention that he purportedly cannot identify discrete patient files is prohibited as it simply repackages the same argument to test whether the Court will change its mind. *See Bryan*, 246 F. Supp. 2d at 1259.

**Second**, the Court did not "misapprehend" the facts relating to the search-ability of the Relativity database. In its Order, the Court stated that the Government "produced the documents in an electronically searchable Relativity database." (D.E. 111 at 3). This fact is true. The Defendant does not and cannot argue that this fact is false or that the Court misunderstood this fact. Instead, the

Defendant complains that, although the documents were OCR'd for search-ability, the Relativity database does not search handwritten text. (D.E. 118 at 13).

**Third**, the Court did not "misapprehend" the facts related to the index provided by the Government to the Defendant for these documents. In its Order, the Court stated that "[f]or each box, the Government provided a corresponding index that includes the box number, the Bates ranges of the box's contents in the database, and a description of any label affixed to the outside of the box." (D.E. 111 at 3.) This fact is true. Again, the Defendant does not and cannot argue that this fact is false or that the Court misunderstood this fact. Thus, the Defendant is left to argue that the index provided by the Government is "not helpful" because it does not include patient names or the number of patient files. (D.E. 118 at 13.).

These rather immaterial and nuanced facts regarding the search-ability of the Relativity database and the accompanying index are not of the "strongly convincing nature" that would be necessary to compel the Court to reconsider its prior Order. The Defendant's argument here is merely a thinly-veiled attempt to re-litigate the issue previously presented and introduce arguments that could have been raised in his original brief. Because the Defendant sets forth no newly

discovered evidence, intervening development or change in controlling law, need to correct a clear error, or misapprehension of fact, the Court should deny the Defendant's motion for reconsideration as a matter of law.

### C. Reconsideration of the Court's Order Would Be Futile Because the Government Has Complied with Its Discovery Obligations

Even if the Defendant could establish a basis for reconsideration – which he cannot – the law dictates the same outcome.

#### 1. The Government Has Complied With Its Discovery Obligations Under Rule 16

The Government took a fulsome approach to discovery. The Government promptly disclosed to the Defendant the contents of over 500 boxes of original hard copy documents, of which 200 contain patient-related files. First, the Government made the original hard copy documents available to the Defendant for inspection at the FBI's storage facility and HHS-OIG's offices where the evidence is stored. The Government also worked with the defense to provide access to the documents upon reasonable lead time.

Under Rule 16(a)(1)(E), making the documents available for inspection and copying is all the Government is required to do. Specifically, Rule 16(a)(1)(E) requires that, upon the defendant's request, the Government must permit the defendant to inspect and to copy or photograph books, papers, documents, data,

photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, if the requested items (1) are material to the preparation of the defendant's defense, (2) are intended to be used by the Government as evidence in its case-in-chief at trial, or (3) came from the defendant. *See* Fed. R. Crim. P. 16(a)(1)(E).

Contrary to the Defendant's contention, the Government has worked with the defense to provide access to the FBI and HHS facilities. Since the FBI warehouse does not have a copier and the space and copying capabilities at HHS-OIG's office are limited, the Government offered to allow the Defendant to send the boxes containing patient files out to an e-discovery vendor for copying or additional processing, if desired. Since February 2017, when the Government first made these boxes of documents available, defense counsel has made only 1 request to the FBI and HHS-OIG to visit the FBI's warehouse and HHS-OIG's offices to review the boxes of hard copy document and has spent less than 2 days total reviewing them. Since those initial visits back in spring 2017, defense counsel has not asked if the FBI and HHS-OIG would agree to less than the requested 5 to 10 day advance notice time to review the documents or to review more than 20 boxes per day. Failing to raise this issue with the Government, the Defendant now asserts that the Government

has placed onerous conditions on the review of hard copy files. This argument is disingenuous, at best.

Moreover, the Government has exceeded its obligations under Rule 16 by also providing the Defendant with a digital copy of the patient files at issue. It is, ironically, this courtesy production upon which the Defendant targets his grievance. Despite the fact that the Government has made the original hard copy files available for inspection and copying and has spent hundreds of thousands of dollars scanning the hard copy files, the Defendant argues that the files are not scanned to his preference and the Government should share in the costs to rescan the documents.

Rule 16 does not require the Government to "otherwise expend government funds in order to supply criminal defendants with their requested material." *United States v. Freedman,* 688 F.2d 1364, 1366 (11th Cir. 1982). Although the district court has the authority to require the Government to provide the defendant with copies of discovery material, the court's discretion is not "unbridled." *See U.S. v. Jordan*, 316 F.3d 1215 at 1249, n. 72 (11th Cir. 2003). In *Freedman*, the Eleventh Circuit held that a district court abused its discretion in ordering the Government to copy and produce documents at its own expense. 688 F. 2d at 1367. The Eleventh Circuit reasoned that "where the defendant has in no way been prohibited from inspecting the particular documents and cannot demonstrate an undue hardship from

this availability, he should not be permitted to transfer the cost of his discovery request to the Government, especially where . . . the defendant is not indigent." *Id.* at 1366-1367.

The Local Rules for the Northern District of Georgia are in accord. Local Rule 16.1 states, "[U]nless otherwise ordered by the court, a party shall have no obligation to reproduce copies of requested materials (except the Government must provide the defendant a copy of the defendant's prior criminal record) for another party's possession until the requesting party has remitted payment for the duplicating expenses" unless the request is pursuant to the Criminal Justice Act.

Simply put, the Government is unaware of any binding Eleventh Circuit case law that would require Government to produce the patient files to the Defendant in a different electronic format or a "reasonably usable form." *See United States v. Warshak*, 631 F.3d 266, 295 (6th Cir. 2010) (declining to hold that the district court abused its discretion in failing to order the Government to produce discovery in a different form). And, the Defendant has failed to cite any binding authority in support of his position. The Court's Order is consistent with the law and should not be disturbed.

        2.    The Government Has Complied, and Will Continue to Comply, With Its *Brady* Obligations

Just as the Government has complied with its discovery obligations pursuant to Rule 16 (and has, in fact, exceeded its obligations), the Government has complied with its *Brady* obligations.

Nevertheless, the Defendant argues that the Government has not met its affirmative obligation to review the patient files at issue and specifically identify the *Brady* material. The Eleventh Circuit rejected a similar argument in *Jordan*, and explained its reasoning as follows:

> The defendants complain that the Government's discovery was so voluminous that it hindered their pretrial preparation. The discovery was indeed voluminous – because the Government gave the defense access to far more information and materials than the law required. The defendants could hardly complain about that.

316 F.3d at 1253. In even more blunt terms, the Eleventh Circuit went on to explain that defendants' contention that "the Government attempted to avoid its *Brady* obligation by requiring them to search the discovered exculpatory material" was "nothing more than a general request for favorable information" that "went far beyond the law … requires." *Id.* at 1253-54. The same is true of the Defendant's allegation that the Government is required to review the patient files that it has made available to find exculpatory evidence.

Even cases that the Defendant cite support the proposition that the Government is not required to sift through the patient files or to conduct the

13

Defendant's investigation.  *See United States v. Ohle*, No. S3 08 CR 1109 JSR, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011) (citation omitted) ("While the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defenses case."); *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds,* 561 U.S. 358, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010) (holding that "the Government was in no better position to locate any potentially exculpatory evidence than [the defendant]" in response to defense argument that the Government should have scoured the open file in search of exculpatory information to provide to him.); *see e.g. Warshak*, 631 F.3d at 297-298.

This is especially true where, as here, both the Government and the Defendant have equal access to the discovery.  *See Ohle*, 2011 WL 651849, at *4 ("Both the Government and defense counsel had equal access to this database. Thus, the defendants were just as likely to uncover the purportedly exculpatory evidence as was the Government."); *Skilling*, 554 F.3d at 577 (same).  In addition, courts have found that providing documents in a searchable

database and with an index can adequately aid defendants in the review of discovery. *See Ohle*, 2011 WL 651849, at *4.

As the Government has explained in its previous motion responses and briefs, the Government's fulsome production of discovery was necessary because, at the time of production, the Defendant had not told the Government "what [his] 'defense' would be." *Jordan*, 316 F.3d at 1254. Without that information, the Government was not in a position to discern what evidence the Defendant may believe to be exculpatory, or assist in his defense. In light of this uncertainty, and to forestall any arguments that the Government has not complied with its discovery obligations, the Government undertook a fulsome approach to discovery.

The Defendant also repeats his baseless allegations that the Government has engaged in deliberate and intentional acts to block the Defendant's access to exculpatory evidence. The lodging of these allegations without any proffered good faith basis is concerning. Any contention that the Government engaged in deliberate or intentional acts of misconduct with respect to the scanning of these documents could not be further from the truth.

To be clear, the Government acted reasonably and in good faith at all times in its efforts to scan these boxes of hard copy documents into an electronic, searchable database. As the Government explained during the August 10th

teleconference, well before the Defendant was indicted and in connection with related civil *qui tam* litigation, the U.S. Attorney's Office for the Northern District of Georgia ("USAO NDGA"), and the Department of Justice's Civil Division, Fraud Section ("Civil Frauds"), contracted with a third party e-discovery vendor for this project.  As part of the Statement of Work, USAO NDGA and Civil Frauds jointly developed and provided the vendor with detailed project specifications that were based on then-standard DOJ litigation support specifications.  The goal of the project was to create a true and correct electronic copy of what had been produced to the Government in hard copy form.  The overarching principle was for the vendor to scan the contents of each box in the order that the files or loose pages were found in the box.

During the August 10th telephone conference, the Government explained that it had scanned the patient files on a "document level," and that it understood that the electronic production did not reflect folder breaks for the patient files.  The Government provided specific instructions to the vendor for the scanning of patient files.  Specifically, the Government instructed the vendor to scan the medical record folder itself as an individual, stand-alone single page document, and then to scan the contents of the folder, in total, as a single document.  The Government reiterates that its decision to scan the patient files in this manner, years before the Defendant

was even indicted, was not, in any way, shape or form, a purposeful or deliberate effort to degrade the information or to confound the Defendant's, or any other potential defendant's, search for exculpatory material.

Other than his barebones allegations that the Government deliberately attempted to conceal *Brady* materials, the Defendant fails to proffer a single fact to support his spurious claim. There is no *Brady* violation where there is no evidence that the Government "deliberately hid documents within a larger mass of materials or somehow purposefully confounded the defendant's search for exculpatory material." *See Ohle*, WL 651849, at *4 (finding no evidence of bad faith that has been proffered in this case); *Warshak*, 631 F.3d 266, 298 (6th Cir. 2010) (finding that the Government did not abdicate its duties under *Brady* where there is no indication that the Government deliberately concealed any exculpatory evidence in the information it turned over to the defense.). Here, the Defendant cannot point to a shred of evidence suggesting that the Government engaged in misconduct when it chose to scan these files as it did. The Defendant's *Brady* allegations are wholly without merit. In this case, the Government has not only met, but exceeded, its discovery obligations. The Court's Order is legally and factually sound and should not be disturbed.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Reconsideration should be denied.

>Respectfully submitted,
>
>SANDRA MOSER, ACTING CHIEF
>CRIMINAL DIVISION, FRAUD SECTION
>U.S. DEPARTMENT OF JUSTICE
>
>By:   */s/ Sally Molloy*
>
>Sally B. Molloy
>Assistant Deputy Chief
>Georgia Bar No. 140816
>
>Angela Adams
>Trial Attorney
>Georgia Bar No. 613114
>
>United States Department of Justice
>Criminal Division, Fraud Section
>1400 New York Ave., NW
>Washington, DC 20005
>Tel: (202) 616-4993
>Email: sally.molloy2@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to L.R. 5.1B of the Northern District of Georgia, that the foregoing filing complies with the font and point selections approved by L.R. 5.1B.

By: */s/ Sally B. Molloy*
Sally B. Molloy
Georgia Bar No. 140816
Assistant Deputy Chief
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., NW
Washington, DC 20005
Tel: (202) 616-4993
Email: sally.molloy2@usdoj.gov

## CERTIFICATE OF SERVICE

I, Sally Molloy, certify that the foregoing has been served on all attorneys of record in the above-captioned case via the CM/ECF electronic filing system.

> By: */s/ Sally B. Molloy*
> Sally B. Molloy
> Georgia Bar No. 613114
> Assistant Deputy Chief
> United States Department of Justice
> Criminal Division, Fraud Section
> 1400 New York Ave., NW
> Washington, DC 20005
> Tel: (202) 616-4993
> Email: sally.molloy2@usdoj.gov